The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first case for argument this morning is 20-1096, Giles v. Wilkie. Mr. Carpenter, I hope things are going well in Kansas. Welcome and please proceed. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. David Giles. Congress identified the chronic diseases which are entitled to the benefit of the presumption of service connection in various circumstances as diseases as recognized by this Court in Walker. The chronic disease at issue in this case is a psychosis. Neither Congress nor the Secretary require a diagnosis of a specific diagnosis or the same diagnosis but only the symptoms or manifestations of that chronic disease. The interpretation relied upon by the Veterans Court erroneously required that a diagnosis of a particular type of psychosis be the same as noted in service and noted following discharge from service. This was a misinterpretation of the plain language of the Secretary's regulation at 38 CFR 3.303B. Mr. Carpenter, this is Judge Crouse. Let me just start off. Looking at the language itself, it uses the phrase of the same chronic disease. Am I understanding your argument that your view is this organic delusional syndrome is the same disease as bipolar disorder? Yes, Your Honor. It is a psychosis. Each of those conditions are a psychosis. Each of the various diagnoses that are in the record for Mr. Giles are all psychoses. Yes, they have different diagnostic designations, but they are, as the statute requires and as the regulation requires, a chronic disease. So your view is that all psychoses, if you come into it, I don't know how long the list is, but that all of them are interchangeable in terms of being, at the end of the day, the same chronic disease? They are in terms of triggering the presumptive provisions of 3.303B. That what is required is the same chronic disease, not a differentiation, as was relied upon by the Veterans Court, for a specific label or diagnosis of that disease or characterization as a specific disability. This is Judge Toronto. Can I ask you this question? I guess psychoses in the plural is one of the items on the 3.309A list. Another one is other organic diseases of the nervous system. Tumors, malignant or of the brain or spinal cord or peripheral nerves. Would we be having to say that because the single item there, other organic diseases of the nervous system is listed, that all of those different designated problems, tumors, et cetera, brain, spinal cord, peripheral nerves, also would be a single disease? I'm not quite sure I understand your question. This is, I guess, just following up on the Chief's question, and maybe the following helps or maybe it doesn't. It seems to me the argument that bipolar disorder and the organic problem are the same disease either can be a factual one, in which case I don't think it's really within our jurisdiction, or it is a legal assertion about what it means to be listed on this list of 3.309A. And I take it as a legal assertion that you are saying that all psychoses are the same disease because they fall under this single heading. So I wanted to test that proposition by looking at another item on the 3.309 list that is also written in the plural, for which it seems singularly implausible, at least to me, to think that the regulators meant all of the different problems falling under diseases of the nervous system would be viewed as the same disease as a matter of law. Honestly, Your Honor, I have not thought about how that would apply to that particular one, but let me make two points. First, Congress defined it, not the regulation. All the Secretary did in his regulation was copy from the Congress' list at 38 U.S.C. 1101. I'm not sure I'm prepared to agree with you about how the various conditions in the other identified conditions would be treated, but I think that as limited to the listing of psychoses in the plural, it was the clear and obvious intent to cover any condition that would, or excuse me, any chronic disease that would be characterized as a psychosis without regard to whether or not there was a different labeling. And that's particularly true in the context of this regulation because in this regulation, it talks about it in terms of no matter how remote. And so if you limit it as the way that the Veterans Court limited it, then you would be precluded if there was simply a different diagnostic characterization of the psychosis post-service versus the characterization that was made during service. But also in this case, the original provisional diagnosis was one of psychosis generally, not specifically, and then the diagnosis was made of atypical psychosis and then later on schizophrenia. Mr. Carpenter, this is Judge Clabinger. Mr. Carpenter, this is Judge Clabinger. I'm just noting that in the board decision and also in the CAVC decision, there is what they viewed to be a fact-finding that the acute organic disillusional syndrome that your client suffered from was not a chronic disability. That's correct, Your Honor. So you're arguing as a matter of law, it has to be chronic. You're challenging that, saying that that factual determination simply is irrelevant. That's correct, Your Honor. Judge Prozen. Yes, let me just move a little away from that. If we end up agreeing hypothetically with the Veterans Court on 3.303B, where does that leave your other 101 and 3.1M arguments, which I understand depend on the success in the first instance of your argument on 3.303? Is that a valid assumption? That is correct, Your Honor. And I was frankly in a quandary as to whether or not to put them in there since that's obvious, but I felt like I needed to put them in there to demonstrate that if the first argument prevails, then the harmless error analysis was necessarily incorrect. Okay, thank you. As a matter of law. I quite frankly think that I've made all of the points that I feel are necessary to be made. Okay, well we can reserve the balance of my time. Okay, Judge Clevender, did you have another question? No. Okay. All right, fine. We will reserve the remainder of your time for rebuttal and let's hear from the government. Mr. Pelkey. Yes, Your Honor. Good morning and thank you. I'd like to begin with the 3309 list of diseases, which we obviously take the opposite position and took the position in our brief that these are best understood to be categories and not as Mr. Carpenter characterizes it, you know, set diseases that then are subject to, you know, if they're labeled differently in diagnoses, that that has no effect. I think the example that was given of organic diseases of the nervous system is telling. And also, you know, psychosis is another example of a plural category within 3309. And I think it's very, I think the force of this argument becomes very evident when one thinks about us here, lawyers and judges, coming in and talking about diagnoses for mental health professionals as labels of psychosis and not as distinct chronic diseases within the category of psychosis. You know, the facts here and, you know, all of the arguments that Mr. Giles presents, you know, it's a concerted effort to get away from what is at root a very fact-based record about different, you know, a lengthy mental health history, different encounters with mental health providers and different diagnoses and to turn it into a question of a purely legal question. Mr. Pelkey, it's Judge Clevenger. Is it your view that all of the items listed on 3.309 are categories or only the ones listed in the plural? I think that when one goes through the list, you can see things that perhaps look, you know, look more like a one-off disease or a specific thing. But then there are also categories that are in the plural where you can imagine many different things falling under that, different diagnoses. And I think it's also instructive if you look at 3.307 that talks about, you know, manifestations of the same disease, that every instance of something is not necessarily the same chronic disease. It has to present in a way that indicates that this is the same thing. And there, I think, when you're talking about a category like psychoses or these, you know, organic diseases of the central nervous system as another example, what the individual providers... Do you have any other example on the list beyond organic diseases of the nervous system? Well, let me... You know, I think that, like, in 3.307, they talk about, you know, you could have cardiac... I'm talking about the list in 3.309. Well, I think that tumors-you can have different appearances of tumors. That's a category on here. You know, staying away from the subcategories of tropical diseases and, you know, the others that are specific to prisoners of war, where there it's psychoses in the singular and not in the plural. So many of the diseases here I listed are singular diseases like, you know, Hodgkin's disease or leukemia. But there are examples of plural categories as well. And I think here, also, it's dangerous, again... Is there anything in the legislative history of the regulation that draws the distinction between categories and exemplars? I'm not aware of anything in the legislative history that addresses that. And I think both parties have recognized that psychoses is not provided with a definition by Congress or in the regs to sort of-or psychoses to sort of fill out what that term means. But, again, I think that the record, the example is enough. You have-I think it's very dangerous and perhaps even arrogant to think that a diagnosis of bipolar disorder is necessarily the same as organic delusional syndrome or possible schizophrenia or something else. These are different diseases that mental health providers diagnose and that they can have different causes, different manifestations, and manifestation is a key term that shows up in the regs. I have a question. This is just Toronto. Do you happen to know, does the-either today or in earlier versions, does the Diagnostic and Statistical Manual, DSM, which is, I guess, pretty universally used, use the terms diagnosis or disease in a way that might be informative here? Does it view the different kinds of psychoses as different-not view them, does it label them as different diseases or different diagnoses? Not that the VA would be necessarily bound by that, but I'm curious. Yes, Your Honor. And if I may just caveat what I'm about to say with the fact that I am a layperson in mental health issues,  and so with that caveat, I can just say what I found about the DSM volume that was in place in the 80s when the board made its initial determination in 1987. Just some of my observations there the court can follow up with. Was that three or four? That was DSM-III, and it was prior to the DSM-III-R revision, which came subsequent to the board decision in 87. So it's the straight DSM-III, according to my research. And in there, what I found is that psychosis uses a category, and it refers to the sort of different symptomatologies and-I'll use the word manifestation, I can't remember the exact word that's used-that fall into, then, that broader category. And in later DSMs, I don't know if it's in there, but I've seen that, because bipolar can have psychotic features or not have psychotic features. It can be a psychosis or it cannot be a psychosis based on what sorts of symptoms show up. And all of this, I think, underscores that when you talk about something as general as psychosis, which is- Well, can I just ask this specific question? Since you looked at DSM-III, did it use the word disease, and did it use the word diagnosis? And if so, how did it use those two words in relation to each other? That, Your Honor, I'm not comfortable going on the record with that right now. In terms of my memory-and I don't want to fill in something wrong. I did this research to get a sense of what was going on in the mental health community on these sorts of diagnoses, and I'm just not comfortable making definitive statements about how DSM categorizes these things. But I am comfortable saying that psychosis is a plural in the DSM-III. It is made up of-and it refers to different categories or potential findings and labels and sort of subconditions and things that can have features. It's a complex, multiple-input diagnosis, psychosis. And also, it's something that when you read the DSM, you see that it can be attached to other diagnoses. You can have something with psychosis. So all of that, I think-and I would just also add, I think, again, as I said earlier in my argument, I think it's a dangerous place to go. I understand the need to try and interpret the language and the regulations and the statutes, but I think there's enough there with the fact that it's plural, that it's a general term, that, look, if the mental health advisors are putting different diagnosis-or mental health providers are putting different diagnoses on things, and if they are drawing the distinctions, and that distinction in the 80s is being drawn by different mental health professionals, does that make it opposed? Mr. Pelkey, it's Judge Clemenger. Do we have any way of knowing whether it's true or false that not all psychosis are chronic? There seems to be a fact finding in the records here that the organic delusional syndrome suffered by Mr. Carpenter's client was not chronic. The answer to your question is I think no. I don't think we're in a position to know as a matter of medical diagnosis whether all psychosis are chronic. I think the record indicates, from what I see, that they're not, that the mental health providers seem to-that there's acute-there can be acute episodes. Even the 2002 diagnosis of VA talks about the 1984 episode as a break, an acute event. So I think that points to a psychotic event can be singular, temporary. What I'm trying to get at is, if a matter of medical science, not that there are such things as psychosis that are not chronic. I think that that's evident in the record. Again, and that's what-and I don't mean in my interpretation of the record. I mean in terms of medical professionals' assessment of the record, and I think that's enough for us on that point, that it can be temporary and acute. If it's true as a matter of medical science that there's such a thing as a non-chronic psychosis, that supports the argument that psychoses, limited in the plural in the regulation, are categorical and not individual. Yes, Your Honor, I agree. I think that's another factor that points towards what I frankly think is fairly intuitive as well, that psychoses is a broad category that can catch up into it a lot of different manifestations. I don't understand Mr. Carpenter to challenge the fact that the acute organic delusional syndrome suffered by his client was not chronic. If it was not chronic, then he can't get access to 3.303B, period, correct? That's correct, Your Honor. So that's a simple answer to the question. So then the question is whether or not this listing of psychoses somehow erases the fact finding? Correct, Your Honor, and I don't see how it can be read to do so. You made your argument at page 20 of your red brief, the argument you're now making that the listing of psychoses in that regulation was a category. Yes. I didn't see any response from Mr. Carpenter in his reply brief to your argument, did you? I did not, Your Honor. Thank you. And as Your Honor said, I think that that distinction between acute and chronic is fatal to the claim. Also, any finding, and here again, it's so easy in this case to start getting into fact weighing, but if there's a distinction, a supportable distinction, which it does seem to be in the record, between the organic delusional syndrome in 84 and the bipolar diagnosis in 85, that, too, works to sever any connection and any applicability of the regulations here. And ultimately, I think that what this case comes down to is that there is a fact record, a record of findings that puts in a hard line between these two diagnoses in 84 and 85, and that ultimately that is what this case turns on, and it is why the board and the CASC decision are correct. If there's no more questions, I can rest there. Hearing none, thank you. Let's hear from Mr. Carpenter on rebuttal. I'd like to return the court's attention to the statute, and that is 38 U.S.C. 1101.3, which defines chronic diseases. Congress began that list with anemia. Included on that list is arthritis. Included on that list is cardiovascular renal disease, including hypertension. The point I'm trying to make is that when Congress articulated this list or set out this list, it didn't make any type of categorical distinctions. It made a broad statement that these identified and described conditions constituted chronic diseases for the purposes ultimately of the Secretary's regulation at 3.309A, which identifies the diseases which are subject to the presumptive service connection. I'd like now to go to the language of the regulation at 3.303B. In the first sentence, it says, with chronic diseases shown as such in service, and then in parens it refers to the presumptive period under 3.307, as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to an intercurrent cause or causes. In the sentence that follows, but the third sentence of the regulation, says that for a showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity. What the board did, what the Veterans Court did, and what the Secretary is now trying to do in his argument is to create a categorical system which simply isn't supported by the plain language of the statute or the regulation. We are talking about the disease entity, and the disease as described by Congress is psychosis. Now, whether you consider that to be in the plural and then include others, which I think is a reasonable inference, the fact is that there is a requirement, or excuse me, the only requirement is that it is shown as such in service. The government's reliance and the board's reliance on the fact that there was a finding about an organic condition, that was just one of about a half a dozen different diagnostic characterizations of what was noted as such in service, which include the term psychosis and atypical psychosis and schizophrenia. All three of those are sufficient to trigger the provisions of 3.303B, independent of a finding that there was a non-chronic condition in one particular record. And unless there are further questions from the panel, I'm prepared to submit the matter on the argument. Hearing none, I thank both counsel and the case is submitted.